[No. C019118. Third Dist. Sept. 15, 1994.]

DEAN ANDAL, Petitioner, v.
TONY MILLER, as Acting Secretary of State, etc., Respondent;
ROBERT PRESLEY, Real Party in Interest.

**COUNSEL**

Bell, McAndrews & Hiltachk, Charles H. Bell, Jr., and Thomas W. Hiltachk for Petitioner.

Oliver S. Cox and Pamela S. Giarrizzo for Respondent.

Olson, Hagel, Fong, Leidigh, Waters & Fishburn, George Waters and Diane M. Fishburn for Real Party in Interest.

**OPINION**

**SPARKS, Acting P. J.**—Assemblyman Dean Andal, the petitioner in this writ proceeding, is a candidate for a seat on the Board of Equalization at the General Election scheduled for November 8, 1994. One of his opponents is State Senator Robert Presley, the real party in interest. Andal commenced this original mandamus proceeding against Acting Secretary of State Tony Miller seeking a writ of mandate from this court directing Miller to refuse to accept Presley's ballot designation as "Senator/Peace Officer" because it violates Elections Code section 10211.

This proceeding mirrors one initiated in Sacramento County Superior Court. In the superior court proceeding the court denied Andal's petition in a ruling from the bench made August 26, 1994. Due to the imminency of the election, Andal has commenced this original proceeding in this court (Cal. Const., art. VI, § 10; Code Civ. Proc., §§ 1085, 1086) rather than appeal

(Elec. Code, § 10015)[1] or seek mandate against the superior court (*Mann v. Superior Court* (1986) 181 Cal.App.3d 372, 374-375 [226 Cal.Rptr. 263]; *Luke* v. *Superior Court* (1988) 199 Cal.App.3d 1360, 1361, 1364 [245 Cal.Rptr. 594]). Extraordinary relief is available in these circumstances notwithstanding the pendency of the superior court proceeding. (*Farley* v. *Healey* (1967) 67 Cal.2d 325, 326-327 [62 Cal.Rptr. 26, 431 P.2d 650]; *Jolicoeur* v. *Mihaly* (1971) 5 Cal.3d 565, 570, fns. 1-2 [96 Cal.Rptr. 697, 488 P.2d 1].)

Presley's ballot designation of "Senator/Peace Officer" was made pursuant to Elections Code section 10211, subdivisions (a)(3) and (e). He claims that he is entitled to use that designation because "peace officer" is one of his "current principal professions, vocations, or occupations." (Elec. Code, § 10211, subd. (a)(3).) Andal disputes that claim and contends the use of that designation is impermissible because (1) "peace officer" is a status rather than a profession, vocation or occupation, and (2) assuming that "peace officer" is an acceptable designation, it is not one of Presley's principal professions, vocations or occupations and should be stricken as misleading. (Elec. Code, § 10211, subd. (b)(1).) Because this last contention has merit, we shall grant the relief sought.

### THE RECORD

The ballot designation of "Senator/Peace Officer" differs from the designation used by Presley in the June 1994 Primary Election. Presley submitted his ballot designation for the November 1994 General Election to the Secretary of State in late July 1994. The changed designation was based on Presley's appointment earlier that month as a level III reserve deputy sheriff with the Sacramento County Sheriff's Department.

The record indicates that the Secretary of State's office did not investigate whether the ballot designation selected by Presley was factually supported. Instead, its review was limited to ascertaining whether the ballot designation of "peace officer" was a recognized profession, vocation, or occupation within the meaning of Elections Code section 10211, subdivision (a). The Secretary of State's office concluded that it was and approved the ballot designation.

---

[1]Pursuant to Elections Code section 10015, subdivision (a)(1), states: "[a]ny voter may seek a writ of mandate alleging that an error or omission has occurred or is about to occur . . . in the printing of . . . a ballot . . . ." Venue for a proceeding under this section shall be exclusively in Sacramento County where the Secretary of State is named as a respondent. (Elec. Code, § 10015, subds. (b) & (b)(1).) The section also provides that "[t]he action *or appeal* shall have priority over all other civil matters." (Elec. Code, § 10015, subd. (a)(3), italics added.)

This section indicates that the mandamus proceeding must first be commenced in superior court and that review of the superior court judgment be accomplished by way of appeal, absent extraordinary circumstances, as are here present.

When the matter came on for hearing in superior court, the major evidence submitted in support of Presley's designation of "peace officer" consisted of a declaration from Sacramento County Sheriff Glen Craig. That same declaration has been submitted in this proceeding. There Craig averred that from time to time he has appointed reserve deputy sheriffs, at three levels of duty. According to Craig, "Level I reserve deputy sheriffs are assigned to the prevention and detection of crime and may work independently. Level II are also assigned to the prevention and detection of crime, but work under supervision. Level III are authorized to carry out limited duties which do not involve direct law enforcement."[2]

As to the Presley appointment, Craig further declared:

"9. On or about July 7, 1994, I appointed Senator Robert Presley as a Sacramento County Reserve Deputy Sheriff. Although in my opinion, given the Senator's training and background, I could have appointed him at Level I[;] I chose to appoint him at a lesser level. I did this because it was not my intention to use the Senator's services in direct crime prevention and detection.

"10. Instead, I discussed with the Senator two areas that I would like to utilize his skills and services. First, I have established 7 Community Action Panels within Sacramento County. Each will have an advisory board. I have already appointed the Senator to one such panel. The panel is scheduled to meet September 7, 1994.

"11. More importantly, I intend to utilize the unique skills of the Senator given his background in law enforcement and law making. As Sheriff of the

---

[2]All three levels of reserve deputy sheriffs qualify as "peace officers." Penal Code section 830.6, subdivision (a)(1), provides in part that: "[w]henever any qualified person is deputized or appointed by the proper authority as a reserve or auxiliary sheriff or city police officer [or] a reserve deputy sheriff, . . . *the person is a peace officer*; provided, the person qualifies as set forth in Section 832.6, and provided further, that the authority of the person as a peace officer shall extend only for the duration of the person's specific assignment." (Italics added.)

Penal Code section 832.6, subdivision (a), provides in part: "Every person deputized or appointed, as described in subdivision (a) of section 830.6, shall have the powers of a peace officer only when the person is any of the following: . . . [¶] (3) Deployed and authorized only to carry out limited duties not requiring general law enforcement powers in their routine performance. Those persons shall be permitted to perform these duties only under the direct supervision of a peace officer possessing a basic certificate issued by the [Commission on Peace Officer Standards and Training], and shall have completed the training required under section 832 and any other training prescribed by the commission for those persons. Notwithstanding the provisions of this paragraph, a level III reserve officer may perform search and rescue, personnel administration support, community public information services, communications technician services, and scientific services, which do not involve direct law enforcement without supervision."

county where the Capitol is located, I am frequently called upon to comment, testify and take positions on pending crime legislation. This has become a growing responsibility for my office. I have even installed Legi Tech bill tracking service so that my office can monitor legislation.

"12. I am aware that the Senator is leaving the Legislature at the end of this term. I intend to utilize his abilities as an advisor to me on legislative matters. I may also call upon him for advice in other areas of general concern to me regarding the operation of my department.

"13. Because the Senator has not yet left the Legislature, I have not consulted with him in his capacity as a reserve deputy. Like most other reserve deputies, the Senator will not be compensated for his services, nor has he."

Craig's allusion to Presley's background and experience refers to his lengthy service with the Riverside County Sheriff's Department prior to his 1974 election to the Senate as well as his authorship of many crime bills. According to a declaration submitted by Presley, "2. I was a deputy sheriff in Riverside County for more than 24 years before I was elected to the Senate. I was the Undersheriff of Riverside County for the last 12 of those years. As Undersheriff, I was responsible for the day-to-day operations of a sheriff's department of more than 800 employees. I left the Sheriff's Department voluntarily to assume my duties as a State Senator. [¶] 3. While serving in the Senate, I maintained my interest and commitment to law enforcement, and I have become a recognized expert in the area of law enforcement legislation. I have carried and/or authored almost every major law enforcement related legislation in the Senate."

After detailing many of the bills he introduced as well as his training, Presley discussed his recent appointment: "9. I am a Sacramento County reserve deputy sheriff, appointed by Sheriff Glen Craig, assigned to be Sheriff Craig's special advisor. My first assignment is to sit on the Community Action Panel of the Sacramento Sheriff's Department. I also intend to advise the Sheriff on other issues, including pending legislation and the political and legislative process." Presley concludes: "10. Throughout my career I have considered my profession to be that of a peace officer. I spent 24 years in active law enforcement. My past 20 years in the legislature has [*sic*] been dedicated to that profession. I intend to continue to be involved in law enforcement even after I leave the legislature."

## Discussion

Ballot designations are governed by Elections Code section 10211. This section provides in relevant part: "(a) With the exception of candidates for

Justice of the State Supreme Court or court of appeal, immediately under the name of each candidate, and not separated from the name by any line, may appear at the option of the candidate only one of the following designations: . . . [¶] (3) No more than three words designating either the current principal professions, vocations, or occupations of the candidate, or the principal professions, vocations, or occupations of the candidate during the calendar year immediately preceding the filing of nomination documents. . . .

"(b) Neither the Secretary of State nor any other election official shall accept a designation that: [¶] (1) Would mislead the voter. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) The designation shall remain the same for all purposes of both primary and general elections, unless the candidate, at least 83 days prior to the general election, requests in writing a different designation which the candidate is entitled to use at the time of the request."

■ The California Supreme Court has noted that "[a] major purport of the Elections Code is to insure the accurate designation of the candidate upon the ballot in order that an informed electorate may intelligently elect one of the candidates." (*Salinger* v. *Jordan* (1964) 61 Cal.2d 824, 826 [40 Cal.Rptr. 361, 395 P.2d 49].) To further this purpose, the Secretary of State has issued guidelines for selecting ballot designations.[3] These Guidelines define a principal profession, vocation, or occupation as "the primary job or work one does which is the means of livelihood or production of income, as opposed to a hobby or avocation. Some persons may work at more than one profession, vocation, or occupation. Exceptions may apply for persons retired or unemployed by choice or by circumstance. No designation which connotes a status is acceptable. Examples of unacceptable status claims include 'parent', 'taxpayer', 'citizen', 'patriot', 'renter' and 'presidential appointee'. [¶] . . . A candidate may use either his or her current principal profession, vocation or occupation, regardless of the amount of time in which the candidate has engaged in such or, in the alternative, any principal profession, vocation or occupation in which the candidate was engaged over the course of the previous calendar year even though it may no longer be one in which the candidate is currently engaged. In choosing between the alternatives, the candidate must ask himself or herself: 'What is my primary job right now?' and 'What was my primary job last year?' Either job, if

---

[3]The guidelines, entitled "A Guide for Selecting Ballot Designations" (Guidelines), were issued in 1991 by March Fong Eu, the then Secretary of State. They do not have the force of law as they were not promulgated as regulations. They are, however, entitled to great weight as they represent the contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation. (*Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848].)

otherwise proper, based on the statutory criteria, may be used as a ballot designation." (Guidelines, pt. II.C.1.& 2., p. 4.)

Andal first contends that the position of "peace officer" is a status rather than a profession, vocation, or occupation as those terms are used in the statute and the Guidelines. The contention misses the mark. The central characteristic of a profession, vocation or occupation, as the Guidelines make clear, is its attribute as a "means of livelihood or production of income." (Guidelines, pt. II.C.1., p. 4.) It is true that exceptions may apply for "persons retired or unemployed by choice or by circumstance." (*Ibid.*) But these exceptions do not alter the fact that the profession, vocation or occupation in question must in the usual case be one which provides a means of livelihood or produces income for its practitioner. The hallmark of a status under this statutory scheme, on the other hand, is that it is not an income-producing job, even in principle. Thus, positions such as a "taxpayer," a "patriot," or a "renter," to use a few examples from the Guidelines, by definition, are not revenue-generating tasks. Instead, they reflect the status of the candidate and hence are unacceptable. Similarly, a designation as "mountain climber," for example, would reflect a hobby or avocation as opposed to a profession, vocation or occupation.

█ Persons occupying the position of a full-time peace officer in California, such as deputy sheriffs, city police officers, members of the California Highway Patrol, to name just a few,[4] do so as their livelihood and hence would qualify under the statute. Andal counters that "peace officer" is an unacceptable designation because it is too broad a category, encompassing as it does everyone from the Attorney General to the local litter control officer. But as counsel for the Secretary of State correctly observes, there is nothing in Elections Code section 10211 which mandates the selection of the more specific over the more general, so long as the designation chosen does not mislead the voters. "The term 'businessman,' " counsel notes, "could encompass anything from a door-to-door magazine salesman to the president of IBM, but it is routinely accepted as a ballot designation without the requirement of further elaboration." Just as the president of IBM could select the designation "businessman," so too could a regular deputy sheriff use "peace officer." Accordingly, we hold that the position of a paid "peace officer" is a profession, vocation or occupation within the meaning of Elections Code section 10211.

We turn then to Andal's second contention that Presley does not meet the statutory requirements for the use of the term of "peace officer" because it is

---

[4]The positions of persons who are peace officers in California are too numerous to recount here but a substantial number of them are described in the Penal Code. (See, e.g., Pen. Code, § 830.1 et seq.)

not one of his principal professions, vocations or occupations, now or in the past year.[5]

■ As we have recounted, the statute requires that the ballot designation reflect the candidate's *principal* professions, vocations, or occupations . . . ." (Elec. Code, 10211, subd. (a)(3), italics added.) One of the common meanings of the adjective "principal" is "[h]ighest in rank, authority, or importance" (Webster's New Internat. Dict. (2d ed. 1938) p. 1966) and in this sense it is an oxymoron to assert that a candidate may have more than one principal profession, vocation or occupation. Nevertheless, it is clear that by the use of the plural terms the statute envisions that the candidate may indeed engage in multiple principal professions, vocations or occupations. In the words of the Guidelines, a candidate "may work at more than one profession, vocation, or occupation." (Guidelines, pt. II.C.1., p. 4.) Thus, the Legislature used the word "principal" in its secondary sense as meaning "[m]ain; leading; outstanding; important; . . ." (Webster's New. Internat. Dict., *supra*, p. 1966.) In this statutory sense, the word connotes a substantial involvement of time and effort such that the activity is one of the primary, main or leading professional, vocational or occupational endeavors of the candidate. Thus, the term "principal" precludes any activity which does not entail a significant involvement on the part of the candidate. Consequently, involvement which is only nominal, pro forma, or titular in character does not meet the requirements of the statute.

■ Given this definitional requirement, we conclude the evidence is insufficient to support Presley's claim that his position as a reserve deputy

---

[5]The statute permits either the "current" principal professions, vocations, or occupations or those that obtained "during the calendar year immediately preceding the filing of nomination documents." (Elec. Code, § 10211, subd. (a)(3).) Under the Guidelines, "the 'calendar year immediately preceding the filing of nomination papers' is defined as that year beginning January 1 immediately preceding the year in which nomination papers for the office are allowed to be filed." (Guidelines, pt. II.C.2., p. 4.) In this case, that calendar year would be 1993.

Subdivision (e) of Elections Code section 10211 permits a change of designation after the primary election upon a timely request to "different designation which the candidate is entitled to use at the time of the request." While the words "at the time of the request" appear at first blush to suggest that the candidate must be currently engaged in the newly designated principal profession, occupation or vocation at the time of the change request, upon a closer reading we believe subdivision (e) also allows the candidate to include in the new designation one which would have been proper for the Primary Election, namely, a profession, occupation or vocation that the candidate principally engaged in "during the calendar year immediately preceding the filing of the nomination documents," as specified in subdivision (a)(3) of Elections Code section 10211. This conclusion flows from the statutory language in subdivision (e) which permits the candidate to request "a different designation which the candidate is entitled to use at the time of the request." (Elec. Code, § 10211.) In determining what designation a candidate is "entitled to use," it is necessary to refer to the time periods set forth in subdivision (a)(3). Presley's claim for entitlement to use the designation of "peace officer," however, rests on events that occurred after the Primary Election in 1994 and thus no contention is made that events in 1993 justified his use of this designation.

sheriff justified the ballot designation of "peace officer." The claim fails because the evidence did not establish that it was one of his "principal professions, vocations or occupations" (Elec. Code, § 10211, subd. (a)(3)) either at the time he submitted the designation in late July 1994 (Elec. Code, § 10211, subd. (e)) or "during the calendar year immediately preceding the filing of nomination documents" (Elec. Code, § 10211, subd. (a)(3)). As of July 1994, Presley had done nothing pursuant to his recent appointment as a level III reserve deputy sheriff in Sacramento County. The closest he came to performing actual reserve duties was his appointment to a community action panel that was not even scheduled to meet for another six weeks. As to Presley's consulting, Craig admitted that he did not intend to request Presley's guidance until after the election. Craig's declaration is silent whether Presley would still serve as a consultant should his election bid prove successful. Equally fatal is the fact that the nature of his position as a reserve deputy sheriff is such that, unlike full-time or part-time deputy sheriffs, Presley will never be compensated for his service. Thus, the position lacks one of the critical hallmarks of a profession, vocation or occupation.

In our view, the statute and Guidelines indicate that "senator," "legislator," "lawmaker," or some similar designation would properly describe Presley's primary job at the time he filed his request to change his ballot designation, while "peace officer" would not. We are aware that the Guidelines indicate "[a] candidate may use either his or her current principal profession, vocation or occupation, *regardless of the amount of time in which the candidate has engaged in such . . . .*" (Guidelines, pt. II.C.2., p. 4, italics added.) We take this last clause to refer to that situation where the candidate is "retired or unemployed by choice or by circumstance." (Guidelines, pt. II.C.1., p. 4.) We do not take the phrase to mean that a pro forma profession, vocation or occupation which consumes little or none of the candidate's time, and by its nature is never compensated, as is the case here, may be designated properly under Elections Code section 10211.

Recognizing that we may disapprove of his use of "peace officer," Presley requests that he be permitted to amend his ballot designation to "Senator/ Retired Undersheriff." We decline this invitation. It appears from the record that Presley attempted to use this designation in the Primary Election but the Secretary of State determined it was improper. Presley's superior court proceeding challenging the Secretary of State's determination proved unsuccessful. Rather than speedily challenging this determination in a writ proceeding, Presley chose an alternate and improper designation. The use of a designation such as "Retired Undersheriff" is problematic in this case. We note that the Guidelines define "retired" as "having given up one's work,

business, career, etc., especially because of advanced age." (Guidelines, pt. III.E.1., p. 7.) Moreover, under the Guidelines, evidence supporting retired status includes the fact that the candidate "has not had another more recent occupation." (Guidelines, pt. III.E.2.f., p. 7.) Here, of course, Presley had a more recent occupation as a state senator. In any event, we conclude it would be inequitable in these circumstances to require the Secretary of State at this late date to print a ballot designation he has found defective and it would also be unfair to Andal who has never been given an opportunity to challenge this belated designation.

We have complied with the procedural prerequisites for issuance of a peremptory writ of mandate in the first instance. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].) Let a peremptory writ of mandate issue directing respondent Acting Secretary of State to strike the words "Peace Officer" from Presley's ballot designation. This decision is final forthwith as to this court. (See Cal. Rules of Court, rule 24(d).) Pending finality of this decision, our previously issued order prohibiting inclusion of the term "Peace Officer" from the ballot designation shall remain in effect.

Sims, J., and Scotland, J., concurred.