[No. C024367. Third Dist. Aug. 12, 1996.]

DANIEL E. LUNGREN, as Attorney General, etc., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
BILL JONES, as Secretary of State, etc., et al., Real Parties in Interest.

**COUNSEL**

Daniel E. Lungren, Attorney General, Floyd D. Shimomura, Assistant Attorney General, Linda A. Cabatic and Paul H. Dobson, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Oliver S. Cox, Pamela S. Giarrizzo, Olson, Hagel, Fong, Leidigh, Waters & Fishburn, Lance H. Olson, N. Eugene Hill, Kaye, Scholer, Fierman, Hays & Handler and Jeffrey Gordon for Real Parties in Interest.

**OPINION**

**PUGLIA, P. J.**—Petitioner, the Attorney General of the State of California, seeks a peremptory writ of mandate directing respondent superior court to vacate its judgment entered August 2, 1996, insofar as it compels the Attorney General to revise the ballot title and ballot label for Proposition 209 consistent with the statements of respondent superior court made during the August 1, 1996, hearing to "reflect that the chief purpose of the measure is to prohibit affirmative action programs by public entities that are inconsistent with the prohibition in the measure." To preserve our jurisdiction, on August 7, 1996, we issued an order staying respondent court's judgment and any proceedings thereon, pending further order of this court.

We conclude there is no legal or factual basis for respondent court's interference with the exercise of petitioner's statutory duties. We shall therefore order a peremptory writ of mandate to issue and continue our stay order pending finality of this decision.

In its judgment, respondent court granted in part and denied in part the mandate petition of real party in interest. That judgment is appealable. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 79, p. 103, citing *Healdsburg Police Officers Assn.* v. *Healdsburg* (1976) 57 Cal.App.3d 444, 456 [129 Cal.Rptr. 216].) However, since printing of the ballot must commence on August 12, 1996, the Attorney General's remedy by appeal is inadequate. Accordingly, we shall consider the merits of the Attorney General's writ petition. (Cf. *Andal* v. *Miller* (1994) 28 Cal.App.4th 358, 360-361 [34 Cal.Rptr.2d 88].)

Proposition 209, popularly known as the California Civil Rights Initiative, is an initiative constitutional amendment which will appear on the ballot at the November 1996 General Election. The pertinent operative provisions of Proposition 209 would amend article I of the California Constitution to add section 31 in part as follows: "The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting."

The Legislature has invested the Attorney General with the authority and obligation to provide a ballot title for initiative measures which "shall express . . . the purpose of the measure" and "shall give a true and impartial statement of the purpose of the measure in such language that the ballot title shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (Elec. Code, §§ 9051, 9052.) In addition, the Attorney General must provide a ballot label for the proposition, which "shall be a condensed statement of the ballot title prepared by him . . . ." (Elec. Code, § 13281.)

As relevant to this proceeding, the Attorney General submitted the following for inclusion in the ballot:

"**BALLOT TITLE AND SUMMARY**

"**PROHIBITION AGAINST DISCRIMINATION OR PREFERENTIAL TREATMENT BY STATE AND OTHER PUBLIC ENTITIES. INITIATIVE CONSTITUTIONAL AMENDMENT.**

"Prohibits the state, local governments, districts, public universities, colleges, and schools, and other government instrumentalities from discriminating against or giving preferential treatment to any individual or group in public employment, public education, or public contracting on the basis of race, sex, color, ethnicity, or national origin. . . .

"BALLOT LABEL

### PROHIBITION AGAINST DISCRIMINATION OR PREFERENTIAL TREATMENT BY STATE AND OTHER PUBLIC ENTITIES. INITIATIVE CONSTITUTIONAL AMENDMENT.

"Generally prohibits discrimination or preferential treatment based on race, sex, color, ethnicity, or national origin in public employment, education, and contracting. . . ."

On July 26, 1996, real parties in interest Fran Packard, president, League of Women Voters of California, and the No on 209 Campaign (hereafter opponents) petitioned respondent superior court for a writ of mandate. In that proceeding, the opponents asserted the ballot title and ballot label provided by the Attorney General are misleading in that they fail to describe the true purpose of Proposition 209 which the opponents argue is to prohibit affirmative action by state and local government. Concurring with that argument, respondent superior court entered judgment commanding the Attorney General to revise the ballot title and ballot label.

The Secretary of State shall prepare a ballot pamphlet (Elec. Code, § 9081) which shall contain several items with respect to each initiative measure on the ballot, including the official summary prepared by the Attorney General (Elec. Code, § 9086). Section 9092 of the Election Code provides in pertinent part: "Not less than 20 days before he or she submits the copy for the ballot pamphlet to the State Printer, the Secretary of State shall make the copy available for public examination. Any voter may seek a writ of mandate requiring any copy to be amended or deleted from the ballot pamphlet. A peremptory writ of mandate shall issue only upon clear and convincing proof that the copy in question is false, misleading, or inconsistent with the requirements of this code or Chapter 8 (commencing with Section 88000) of Title 9 of the Government Code, and that issuance of the writ will not substantially interfere with the printing and distribution of the ballot pamphlet as required by law. . . ." (See also Gov. Code, § 88006.)

 "The title and summary inform the public of the general purpose of the [measure]." (*People* v. *Flores* (1986) 178 Cal.App.3d 74, 83 [223 Cal.Rptr. 465], citing *Clark* v. *Jordan* (1936) 7 Cal.2d 248, 252 [60 P.2d 457, 106 A.L.R. 549].) " '[T]he title and summary need not contain a complete catalogue or index of all of the measure's provisions and "if reasonable minds may differ as to the sufficiency of the title, the title should be held sufficient." [Citation.] As a general rule, the title and summary prepared by the Attorney General are presumed accurate, and substantial

compliance with the "chief purpose and points" provision is sufficient. [Citation.]' " (*Tinsley* v. *Superior Court* (1983) 150 Cal.App.3d 90, 108 [197 Cal.Rptr. 643], quoting *Amador Valley Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 243 [149 Cal.Rptr. 239, 583 P.2d 1281], citing *People* v. *Frierson* (1979) 25 Cal.3d 142, 187 [158 Cal.Rptr. 281, 599 P.2d 587].) Stated otherwise, " ' "[t]he title need not contain a summary or index of all of the measure's provisions. Within certain limits what is and what is not an important provision is a question of opinion. Within those limits the opinion of the attorney-general should be accepted by this court." ' " (*Brennan* v. *Board of Supervisors* (1981) 125 Cal.App.3d 87, 92 [177 Cal.Rptr. 677], quoting *Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 145 [222 P.2d 879].)[1]

Of course, "[t]he Attorney General's statement must be true and impartial, and not argumentative or likely to create prejudice for or against the measure. [Citation.] The main purpose of these requirements is to avoid misleading the public with inaccurate information. [Citations.]" (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra*, 22 Cal.3d at p. 243.) The ballot title and summary "must reasonably inform the voter of the character and real purpose of the proposed measure." (*Tinsley* v. *Superior Court, supra*, 150 Cal.App.3d at p. 108, citing *Boyd* v. *Jordan* (1934) 1 Cal.2d 468, 472 [35 P.2d 533].) Still, " '[o]nly in a clear case should a title . . . [or summary] be held insufficient.' " (*Brennan* v. *Board of Supervisors, supra*, 125 Cal.App.3d at pp. 92-93, quoting *Epperson* v. *Jordan* (1938) 12 Cal.2d 61, 66 [82 P.2d 445].)

■ Here, the brevity of the operative language of Proposition 209 lends itself to the formulation of a title and summary of the initiative measure in its very own words. Those words bear repeating: "The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." The Attorney General titles the measure: "PROHIBITION AGAINST DISCRIMI- NATION OR PREFERENTIAL TREATMENT BY STATE AND OTHER PUBLIC EN- TITIES." The Attorney General summarizes the measure: "Prohibits the state,

---

[1]Opponents contend there should be no deference accorded to the Attorney General because he co-authored the official Rebuttal to the Arguments Against 209. As an elected state constitutional officer, the Attorney General is not only entitled to an opinion on matters of public importance, he is entitled to state that opinion publicly. It is immaterial whether the Attorney General supports or opposes Proposition 209. (Cf. Elec. Code, §§ 9002, 9003.) Rather, the issue is whether the title, summary and label submitted for the ballot "give a true and impartial statement of the purpose of the measure in such language that the ballot title shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (Elec. Code, § 9051.)

local governments, districts, public universities, colleges, and schools, and other government instrumentalities from discriminating against or giving preferential treatment to any individual or group in public employment, public education, or public contracting on the basis of race, sex, color, ethnicity, or national origin. . . ." In the ballot label, the Attorney General describes the measure: "Generally prohibits discrimination or preferential treatment based on race, sex, color, ethnicity, or national origin in public employment, education, and contracting. . . ."

Insofar as relevant here, the title, summary and label provided by the Attorney General are essentially verbatim recitations of the operative terms of the measure. The Attorney General has added nothing, omitted nothing and the words used are all subject to common understanding. The electorate can hardly be deceived by this essentially verbatim recital of the straightforward text of the measure itself.

Nevertheless, the respondent court interjected itself into the ballot pamphlet preparation process, concluding the Attorney General "has not fully stated the main purpose or chief point of the initiative, . . . to effect changes or stop the affirmative action programs within the [S]tate of California. . . ." As one of the stated rationales for its ruling, the court relied upon its perception that "the proponents have not shown any embarrassment whatever for their intention to repeal affirmative action programs . . . ."[2] In so stating, it appears respondent court considered statements allegedly made by supporters of Proposition 209 which were contained in exhibits to the opponents' writ petition. For example, an article in the San Francisco Examiner purports to quote University of California Regent Ward Connerly, a supporter of the initiative, that "the public's going to end affirmative action in November," presumably by approving Proposition 209. Another article in The Hotline purports to quote Governor Wilson, also a supporter of the initiative, concerning defeat of a legislative bill to eliminate race and gender as criteria in state hiring, contracting and university enrollment: "[The bill's defeat] effectively blocks any further serious discussion in the Legislature of the value of affirmative action. . . . It is increasingly apparent that the Democratic majority in the Legislature is unwilling to confront the issue of reverse discrimination arising from affirmative action programs. Fortunately the people of California will get that opportunity at the ballot box." The opponents also tendered the ballot argument submitted in favor of Proposition 209 signed by Governor Wilson and Regent Connerly. The argument refers to "affirmative action" twice, asserting that the preferences which Proposition 209 will eliminate "masquerade as affirmative action" and that

---

[2] The court did not explain why, as its statement implies, the proponents should be embarrassed.

"Real 'affirmative action' originally meant no discrimination and sought to provide opportunity."

The court erred in relying on these extraneous materials. The mandate to the Attorney General is to state the purpose and effect of the measure, not to reiterate selectively fragments of public commentary and debate on the measure. In any event, "[t]he term 'affirmative action' . . . is rarely defined . . . so as to form a common base for intelligent discourse." (*Dawn* v. *State Personnel Board* (1979) 91 Cal.App.3d 588, 593 [154 Cal.Rptr. 186] (conc. opn. of Paras, J.).) Most definitions of the term would include not only the conduct which Proposition 209 would ban, i.e., discrimination and preferential treatment, but also other efforts such as outreach programs. (See, e.g., Random House Dict. of the English Language (2d ed. 1987) p. 34, col. 1 ["the encouragement of increased representation of women and minority-group members, esp. in employment."]; American Heritage Dict. (New College ed. 1976) p. 22, col. 1 ["Action taken to provide equal opportunity, as in hiring or admissions, for members of previously disadvantaged groups, such as women and minorities, often involving specific goals and timetables.]; Black's Law Dict. (5th ed. 1983), p. 29, col. 2 ["Employment programs required by federal statutes and regulations designed to remedy discriminatory practices in hiring minority group members; *i.e.* designed to eliminate existing and continuing discrimination, to remedy lingering effects of past discrimination, and to create systems and procedures to prevent future discrimination . . . ."]; Garner, Dict. of Modern Legal Usage (2d ed. 1995), p. 36, col. 1 ["The phrase is sometimes used generically to denote 'a positive step taken,' as well as more specifically to denote 'an attempt to reverse or mitigate past racial discrimination. . . ."]; see also 59 Ops.Cal.Atty.Gen. 87, 90-91 (1976).) Accordingly, any statement to the effect that Proposition 209 repeals affirmative action programs would be overinclusive and hence "false and misleading." (Elec. Code, § 9092.)

We recognize respondent superior court accorded the Attorney General discretion, in complying with its judgment, to modify the term "affirmative action" by reference to "discrimination" and "preferential treatment." Although, as so qualified, the term would not be overinclusive, we fail to see why the term *must* be added to describe "the character and real purpose of the proposed measure." (See *Tinsley* v. *Superior Court, supra,* 150 Cal.App.3d at p. 108.) The Attorney General accurately and completely describes the measure as prohibiting, in public employment, education or contracting, discrimination and preferential treatment on the basis of race, sex, color, ethnicity, or national origin. Even if we assume that much, most or all of the impact of the prohibition will be borne by programs commonly associated with the term "affirmative action," we cannot fault the Attorney General for

refraining from the use of such an amorphous, value-laden term in the ballot title and ballot label.

By essentially repeating the operative language of Proposition 209, the Attorney General has complied with the mandate that he provide the electorate with "a true and impartial statement of the purpose of the measure . . . ." (Elec. Code, §§ 9051, 9052.) Respondent superior court was not authorized to require more.

The Attorney General's petition prays for issuance of a peremptory writ in the first instance. The opponents have been served and have filed opposition to the petition. The procedural requirements delineated in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893], having been satisfied, we are authorized to issue a peremptory writ in the first instance.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its judgment entered August 2, 1996, insofar as the judgment compels the Attorney General to revise the ballot title and ballot label for Proposition 209 to "reflect that the chief purpose of the measure is to prohibit affirmative action programs by public entities that are inconsistent with the prohibition in the measure," This decision is final forthwith. (See Cal. Rules of Court, rule 24(d).) The previously issued stay shall remain in effect pending finality of this decision.

Morrison, J., concurred.

**SIMS, J.**—I concur in the judgment.

As the majority point out, the Attorney General's "Ballot Title and Summary" and "Ballot Label" track verbatim the substantive language of the initiative and therefore cannot be false or misleading. (Elec. Code, § 9092.) This is sufficient to decide the case. I do not reach the question whether the term "affirmative action" would be overinclusive or whether the term could be fairly used to describe the initiative had the Attorney General chosen to do so.

The petition of real parties in interest for review by the Supreme Court was denied August 12, 1996.