TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-304 |
| of | : | |
| | : | June 30, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

HONORABLE SCOTT BAUGH, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Is Corporations Code section 318, requiring the Secretary of State to maintain a registry of women and minorities to serve on corporate boards of directors, rendered unconstitutional by the recent adoption of section 31 of article I of the Constitution?

CONCLUSION

Corporations Code section 318, requiring the Secretary of State to maintain a registry of women and minorities to serve on corporate boards of directors, is not rendered unconstitutional by the recent adoption of section 31 of article I of the Constitution.

ANALYSIS

Corporations Code section 318 **Footnote No. 1** requires the Secretary of State to maintain a registry of "distinguished women and minorities" who are available to serve on corporate boards of directors. Section 318 states:

"(a) The Secretary of State shall develop and maintain a registry of distinguished women and minorities who are available to serve on corporate boards of directors. As used in this section, 'minority' means an ethnic person of color including American Indians, Asians (including, but not limited to, Chinese, Japanese, Koreans, Pacific Islanders, Samoans, and Southeast Asians), Blacks, Filipinos, and Hispanics.

"(b) For each woman or minority who participates in the registry, the Secretary of State shall maintain information on his or her educational, professional, community service, and corporate governance background. . . .

"(c) In addition to the information subdivision (b) requires, each woman or minority who participates in the registry may disclose any number of personal attributes that may contribute to board diversity. Those attributes may include, but are not limited to, gender, physical disability, race, or ethnic origin.

"(d) In addition to the information subdivision (b) requires, each woman or minority who participates in the registry may indicate characteristics of corporations for which he or she would consider, or is especially interested in, serving as a director. These characteristics may include, but are not limited to, company size, industry, geographic location, board meeting frequency, director time commitments, director compensation, director insurance or indemnification, or social policy concerns.

"(e) Any woman or minority may nominate himself or herself to the registry by filing with the Secretary of State the information required by subdivision (b) on a form the secretary prescribes. Any registrant may attach a copy of his or her resume and up to two letters of recommendation to his or her registration form. Each registrant's registration form, together with any attached resume or letters of recommendation, shall constitute his or her registry transcript.

"(f) The Secretary of State shall make appropriate rules requiring registrants to renew or update their filings with the registry, as necessary to ensure continued accuracy of registry information.

"(g) The Secretary of State shall assign each registrant a file number, then enter the information described in subdivisions (b), (c), and (d) into a data base, using the registrant's file number to identify him or her. The registry data base shall not disclose any registrant's name or street address, but may list the city, county, or ZIP Code of his or her business or residence address. The secretary shall make data base information available to those persons described in subdivisions (i) and (j).The secretary may provide that access either by permitting direct data base searches or by performing data base searches on written request.

"(h) The Secretary of State may also make information contained in the registry data base available to any person or entity qualified to transact business in California that regularly engages in the business of providing data base access or search services; provided, that data base access will not be construed to entitle the user to access any registrant's transcript.

"(i) The Secretary of State shall make information contained in a reasonable number of registrants' transcripts available to any corporation or its representative. A 'representative' may be an attorney, an accountant, or a retained executive recruiter. A 'retained executive recruiter' is an individual or business entity engaged in the executive search business that is regularly retained to locate qualified candidates for appointment or election as corporate directors or executive officers.

"(j) The Secretary of State may also grant access to a reasonable number of registrants' transcripts to any other person . . . .

"(k) The Secretary of State may employ reasonable means to verify that any party seeking access to registry transcript information is one of those specified in subdivision (i) or (j). To that end, the secretary may require a representative to identify its principal, but may not disclose that principal's identity to any other person.

"(l ) Upon written request specifying the registrant's file number, the Secretary of State shall provide any party entitled to access to registry transcripts with a copy of any registrant's transcript. The secretary may by rule or regulation specify other reasonable means by which persons entitled thereto may order copies of registrants' transcripts.

"(m) Notwithstanding any other provision of law, no person shall be entitled to access to information the registry contains, except as this section specifically provides.

"(n) The Secretary of State shall charge fees for registering with the registry, obtaining access to the registry data base, and obtaining copies of registrants' transcripts. The Secretary of State, in consultation with the Senate Commission on Corporate Governance, Shareholder Rights, and Securities Transactions, shall fix those fees by regulation. Fees shall be fixed so that the aggregate amount of all fees collected shall be sufficient to cover the total cost of administering the registry program. Registration fees shall be fixed so as to encourage qualified women and minorities to participate. Fees shall be deposited into the Secretary of State's Business Fee Fund.

"(o) The Secretary of State may make any rule, regulation, guideline, or agreement the secretary deems necessary to carry out the purposes and provisions of this section.

"(p) The Secretary of State may cooperate with the California Commission on the Status of Women, the California Council to Promote Business Ownership by Women, the Senate Commission on Corporate Governance, Shareholder Rights, and Securities Transactions, women's organizations, minority organizations, business and professional organizations, and any other individual or entity the secretary deems appropriate . . . .

"(q) The Secretary of State may seek registrants' consent to be listed in a published directory of women and minorities eligible to serve as corporate directors, which will contain a summary of each listed registrant's qualifications. The secretary may periodically publish, or cause to be published, such a directory. Only those registrants who so consent in writing may be included in the directory. The printed directory shall be provided to any person upon payment of a fee, which the Secretary of State will determine by regulation, in consultation with the Senate Commission on Corporate Governance, Shareholder Rights, and Securities Transactions.

"(r) The Secretary of State shall implement this section no later than January 1, 1995.

"(s) At least once in each three-year period during which the registry is available for corporate use, the Secretary of State, in consultation with the Senate Commission on Corporate

Governance, Shareholder Rights, and Securities Transactions, shall report to the Legislature on the extent to which the registry has helped women and minorities progress toward achieving parity in corporate board appointments or elections."

Accordingly, a person meeting the qualifications of section 318 may become a registrant by self-nomination, which consists of filing a form prescribed by the Secretary of State, to which may be attached a resume and up to two letters of recommendation. These documents, collectively, become the registrant's "transcript." The registry, including transcripts, is made available to persons who are seeking qualified candidates to serve as corporate directors.

We are asked whether section 318 is now unconstitutional due to the adoption of section 31 of article I of the Constitution by the voters at the general election on November 5, 1996. The 1996 constitutional amendment states:

"(a) The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.

"(b) This section shall apply only to action taken after the section's effective date.

"(c) Nothing in this section shall be interpreted as prohibiting bona fide qualifications based on sex which are reasonably necessary to the normal operation of public employment, public education, or public contracting.

"(d) Nothing in this section shall be interpreted as invalidating any court order or consent decree which is in force as of the effective date of this section.

"(e) Nothing in this section shall be interpreted as prohibiting action which must be taken to establish or maintain eligibility for any federal program, where ineligibility would result in a loss of federal funds to the state.

"(f) For the purposes of this section, 'state' shall include, but not necessarily be limited to, the state itself, any city, county, city and county, public university system, including the University of California, community college district, school district, special district, or any other political subdivision or governmental instrumentality of or within the state.

"(g) The remedies available for violations of this section shall be the same, regardless of the injured party's race, sex, color, ethnicity, or national origin, as are otherwise available for violations of then-existing California antidiscrimination law.

"(h) This section shall be self-executing. If any part or parts of this section are found to be in conflict with federal law or the United States Constitution, the section shall be implemented to the maximum extent that federal law and the United States Constitution permit. Any provision held invalid shall be severable from the remaining portions of this section."

We conclude that the 1996 constitutional amendment does not render section 318 unconstitutional.

In interpreting a constitutional provision, we follow the same principles utilized in construing a statutory provision. "Ordinarily, '[r]ules of construction and interpretation that are applicable when considering statutes are equally applicable in interpreting constitutional provisions' [Citation.]" *(Armstrong v. County of San Mateo* (1983) 146 Cal.App.3d 597, 608.) As in the case of a statute, we must determine the intent of the provision, looking first at the plain meaning of the words used. "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.]" *(DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) When the constitutional provision has been adopted as an initiative measure approved by the voters, we may consider the analysis prepared by the Legislative Analyst, the arguments included in the ballot pamphlet, and the summary of the measure by the Attorney General. In 75 Ops.Cal.Atty.Gen. 155, 213 (1993), we explained:

"In construing constitutional provisions adopted through the initiative power, one long accepted extrinsic aid is the election brochure pamphlet, which may constitute the only legislative history of a constitutional amendment adopted through the initiative power. [Citation.] In addressing issues of constitutional interpretation, the brochure arguments, analysis by the Legislative Analyst, and title and summary prepared by the Attorney General may be considered." (Fn. omitted.)

Applying these principles of construction, we first note that section 31 of article I, by its own terms, is limited to governmental discrimination against or preferences for individuals or groups on the basis of race, sex, color, ethnicity, or national origin "in the operation of public employment, public education, or public contracting." (Cal. Const., art. I, § 31, subd. (a).) Thus, it does not purport to apply to every distinction made on the basis of race, sex, color, ethnicity, or national origin, but only to discrimination or preferences in the operation of public employment, public education, or public contracting.

The Attorney General's summary of the initiative measure (Proposition 209) contained in the voter's pamphlet stated in part:

"Prohibits the state, local governments, districts, public universities, colleges, and schools, and other government instrumentalities from discriminating against or giving preferential treatment to any individual or group in public employment, public education, or public contracting on the basis of race, sex, color, ethnicity, or national origin." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), p. 30.)

In *Lungren* v. *Superior Court* (1996) 48 Cal.App.4th 435, 442, the court upheld the validity of the ballot summary prepared by the Attorney General, stating in part: "[A]ny statement to the effect that Proposition 209 repeals affirmative action programs would be overinclusive and hence 'false and misleading.' (Elec. Code, § 9092.)" Consistent with the ballot summary of the Attorney General, the Legislative Analyst stated with respect to the initiative measure:

"This measure would eliminate state and local government affirmative action programs *in the areas of public employment, public education, and public contracting* to the extent these programs involve 'preferential treatment' based on race, sex, color, ethnicity, or national origin. . . ." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), p. 30, italics added.)

It is beyond dispute that Proposition 209 was limited in scope to the areas of public employment, public contracting, and public education. It is readily apparent that section 318 does not fall into any of these categories. The registry created under section 318 is for use by those seeking candidates to serve as directors of corporations. The registry has no role in facilitating public employment, contracting, or education.

We conclude that section 318, requiring the Secretary of State to maintain a registry of women and minorities to serve on corporate boards of directors, is not rendered unconstitutional by the recent adoption of section 31 of article I of the Constitution.

\* \* \* \* \*

**Footnote No. 1**
All references hereafter to the Corporations Code are by section number only.