Filed 8/13/24

CERTIFIED FOR PARTIAL PUBLICATION<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| ROB BONTA, as Attorney General, etc.,<br><br>    Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF SACRAMENTO COUNTY,<br><br>    Respondent;<br><br>JON COUPAL et al.,<br><br>    Real Parties in Interest. | C101764<br><br>(Super. Ct. No. 24WM000115) |

ORIGINAL PROCEEDING in mandate. Stay issued. Petition granted. Shelleyanne W.L. Chang, Judge.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Benjamin M. Glickman and Megan A.S. Richards, Deputy Attorneys General, for Petitioner.

---

\* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part IV of the Factual and Procedural Background and part I of the Discussion.

1

No Appearance for Respondent.

Bell, McAndrews & Hiltachk, Thomas W. Hiltachk, Paul Gough; and Laura Dougherty for Real Parties in Interest Jon Coupal and Howard Jarvis Taxpayers Association.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Benjamin M. Glickman and Megan A. S. Richards, Deputy Attorneys General, for Real Parties in Interest Shirley N. Weber, as Secretary of State, and the Office of State Printing.[1]

Petitioner the Attorney General of the State of California drafted language for the ballot title and summary and ballot label for Proposition 5, a proposed amendment by the Legislature to the California Constitution that would allow passage of certain local bonds by 55 percent voter approval rather than the current two-thirds margin. Real parties in interest Jon Coupal and Howard Jarvis Taxpayers Association brought a petition for writ of mandate in the superior court that did not challenge the ballot title and summary, but instead challenged the ballot label, which states in pertinent part that Proposition 5 "[a]llows approval of local infrastructure and housing bonds for low- and middle-income Californians with 55% vote."[2] Real parties claimed the ballot label is misleading and prejudicial in that it does not accurately describe the character and purpose of the amendment because it does not specify that current law requires approval by two-thirds of voters. Respondent court agreed, expressing the opinion that the ballot label fails "to

---

[1] The Office of State Printing (State Printer) is also referred to as the Office of State Publishing. (See Gov. Code, § 14850.) This real party in interest was referred to as the Office of the State Printer in the filed petition.

[2] Other real parties in interest are the Secretary of State and State Printer, which take no position on the merits here. Subsequent references to "real parties" are to Jon Coupal and the Howard Jarvis Taxpayers Association, except where noted.

inform the voters of the chief purpose of Proposition 5." Consequently, respondent court granted relief in mandate and entered an order and judgment that directs the Attorney General to revise the ballot label and include additional language. By way of mandate filed in this court, the Attorney General challenges that decision.

We conclude that the language for the ballot label, which incorporates a "condensed version of the ballot title and summary," concisely and accurately describes Proposition 5 in terms that are not misleading. (Elec. Code,[3] § 9051, subd. (b)(1).) Moreover, respondent court failed to accord the discretion due to the Attorney General in drafting ballot materials, including the ballot label. Accordingly, we shall issue a peremptory writ of mandate directing respondent court to deny real parties' petition for writ of mandate and thereby allow the Attorney General's originally drafted language for the ballot label to be used in ballot materials.

## FACTUAL AND PROCEDURAL BACKGROUND

### I

### *Proposition 5*

Since the adoption of Proposition 13 following its passage in 1978, local bonds and taxes to support those bonds generally must be approved by a two-thirds vote of the electorate. (Cal. Const., Art. XIII A, § 1, subd. (b)(2); *Cumero v. Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 592; *Foothill-De Anza Community College Dist. v. Emerich* (2007) 158 Cal.App.4th 11, 16.) However, there are exceptions. Following the passage of Proposition 39 in 2000, approval of school bonds requires only 55 percent voter approval. (Prop. 39, § 4, as approved by voters, Gen. Elec. (Nov. 7, 2000); Cal. Const., Art. XIII A, § 1, subd. (b)(3); *Foothill-De Anza Community College Dist.*, at p. 16.) Proposition 5 would similarly amend the Constitution to permit bonds for public

---

[3] Undesignated statutory references are to the Elections Code.

3

infrastructure and affordable housing with 55 percent voter approval.  (Assem. Const. Amend. No. 10, Stats. 2024 (2023-2024 Reg. Sess.) res. ch. 134, amending Assem. Const. Amend. No. 1, Stats. 2023 (2023-2024 Reg. Sess.) res. ch. 173.)

II

*Title And Summary And Ballot Label*

Pursuant to his statutory obligation, the Attorney General was tasked with preparing and submitting to the Secretary of State a title and summary for the measure, which included the Legislative Analyst's statement of the fiscal impact of the measure. (§§ 9050, 9051.)  The title and summary "shall not exceed 100 words, not including the fiscal impact statement."  (§ 9051, subd. (a)(1).)  Excluding the fiscal impact statement, the title and summary the Attorney General drafted for Proposition 5 states:

**"ALLOWS LOCAL BONDS FOR AFFORDABLE HOUSING AND PUBLIC INFRASTRUCTURE WITH 55% VOTER APPROVAL.  LEGISLATIVE CONSTITUTIONAL AMENDMENT.**

"Allows local bonds for affordable housing for low- and middle-income Californians, or for public infrastructure including roads, water, and fire protection to be approved by 55% of voters, rather than current two-thirds approval requirement.

"Bonds must include specified accountability requirements, including citizens oversight committee and annual independent financial and performance audits.

"Allows local governments to assess property taxes above 1% to repay affordable housing and infrastructure bonds if approved by 55% of voters instead of current two-thirds approval requirement."  (Bullets omitted.)

The Attorney General was further tasked with preparing a ballot label not to exceed 75 words, which must be "a condensed version of the ballot title and summary *including* the financial impact summary."  (§ 9051, subd. (b)(1), italics added; see also § 303, subd. (b).)  Here, the Attorney General presented evidence he received the Legislative Analyst's materials for Proposition 5 as well as other ballot measures on

4

July 5, 2024, the same day the Attorney General's materials were due to the Secretary of State to be provided for public comment. It was thus necessary to account for the Legislative Analyst's contribution to the ballot label. The complete ballot label submitted by the Attorney General to the Secretary of State, including the Legislative Analyst's fiscal impact summary, contains the following language:

**"ALLOWS LOCAL BONDS FOR AFFORDABLE HOUSING AND PUBLIC INFRASTRUCTURE WITH 55% VOTER APPROVAL. LEGISLATIVE CONSTITUTIONAL AMENDMENT.** Allows approval of local infrastructure and housing bonds for low- and middle-income Californians with 55% vote. Accountability requirements. **Fiscal Impact**: Increased local borrowing to fund affordable housing, supportive housing, and public infrastructure. The amount would depend on decisions by local governments and voters. Borrowing would be repaid with higher property taxes."

Counting the words "fiscal impact" as part of the label and considering the phrase "low- and middle-income" as four words, the ballot label amounts to some 68 words, including 35 words in the portion drafted by the Attorney General. (Capitalization & boldface omitted.) Real parties and respondent court described the label as originally drafted as containing 65 words, which may reflect a different counting of this language.

III

*Proceedings In Respondent Court*

Real parties filed a petition for writ of mandate in the superior court on August 1, 2024, challenging the ballot label on the ground that it failed to accurately describe the measure's real purpose, to reduce the voter approval requirement from two-thirds to 55 percent, and that it thereby misled voters by withholding " 'vital information' " with no "valid reason" for doing so "since the word limit for the ballot label is not an impediment to providing such information." Real parties reasoned that this was easily remedied by changing the label to refer to the "current two-thirds approval requirement." (Boldface & underscoring omitted.)

5

Respondent court set the matter for hearing at 1:30 p.m. on August 9, 2024, and provided its tentative decision the day before the hearing. The parties agreed to submit the matter without a hearing to facilitate appellate review, and the Attorney General drafted a proposed final order and judgment that was approved by both parties as to form and signed by the court on August 9. Respondent court found "no fault" with the Attorney General not modifying his own language upon receipt of the Legislative Analyst's language for the label given that the materials were due to the Secretary of State. But the court reasoned the language "would mislead the voters absent use of additional clarifying language, which additional language is available within the 75-word limit." Respondent court concluded that the original language "fails to inform the electorate of the character and purpose of the measure."[4] Respondent court directed the Attorney General to change the sentence stating Proposition 5 allows approval of the bonds "with 55% vote" to instead read "with 55% voter approval, rather than current two-thirds approval requirement." (Underscoring omitted.)

Immediately following entry of respondent court's written order and judgment on August 9, the Attorney General filed the current petition for writ of mandate in this court. The same day, this court issued a temporary stay and advised the parties that we were considering issuing a peremptory writ in the first instance and that "[a]ny opposition or further opposition [wa]s to be filed on or before 12:00 p.m. on August 12, 2024." (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171.)

---

[4] Respondent court found real party Howard Jarvis Taxpayers Association lacked standing to appear as a petitioner pursuant to section 13314 but found the issue not dispositive given real party Coupal had standing.

6

IV

*State Printer*

In the current petition to this court, petitioner explains that real parties, the Secretary of State and State Printer, requested a ruling by 5:00 p.m. on August 12, 2024. This is consistent with Assistant State Printer Norma Kreider's declaration, which was provided to the superior court, that the final text for the voter information guide must be delivered by that time to allow adequate time for preparation and mailing. Kreider declared: "[State Printer] will require 55 working days to complete the printing of the current state voter information guide and mailing by both the [State Printer] and a private vendor under contract with the Secretary of State. This 55-day schedule assumes operation of the printing plant 24 hours per day, 6 days per week between August 12, 2024, and October 26, 2024, reserving the seventh day each week to address mechanical problems as necessary and to make up for any time lost in the printing processes as a result of such problems." The majority of voter information guides must be mailed by October 15, 2024, which is 21 days before the November 5 election. (§ 9094, subd. (a).)

DISCUSSION

I

*Timeliness And Remedy*

Remedy by appeal is inadequate considering the very short timeframe that remains available to revise the ballot materials. (See *Lungren v. Superior Court* (1996) 48 Cal.App.4th 435, 438; *Andal v. Miller* (1994) 28 Cal.App.4th 358, 360-361.) However, we conclude there is sufficient time to act on the current petition, considering the issues raised and procedural context. The petition was filed immediately following respondent court's ruling and within the public examination period, which in this case commenced exactly 20 days before the Secretary of State planned to send the ballot materials to the State Printer. (See Elec. Code, § 9092; Gov. Code, § 88006.)

7

By statute, a peremptory writ of mandate may issue only if "issuance of the writ will not substantially interfere with the printing and distribution of the state voter information guide" or "ballot pamphlet" as required by law." (Elec. Code, § 9092 [state voter information guide]; Gov. Code, § 88006 [ballot pamphlet].) Considering the assistant state printer's declaration, and the fact that this court's temporary stay was only with respect to the ballot label for Proposition 5, the minimal delay of one day past August 12, 2024, occasioned by the temporary stay will not substantially interfere with the timely printing and distribution of ballot materials.

## II

### *Merits*

The Elections Code requires the Attorney General to prepare a ballot title and summary that "give[s] a true and impartial statement of the purpose of the measure in such language that the ballot title and summary shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (§ 9051, subd. (e); see § 9050.) These materials "must reasonably inform the voters of the character and purpose of the proposed measure" while avoiding " 'misleading the public with inaccurate information.' " (*Yes on 25, Citizens for an On-Time Budget v. Superior Court* (2010) 189 Cal.App.4th 1445, 1452.) "In preparing the ballot title and summary and the ballot label, the Attorney General is afforded considerable latitude." (*Ibid*.) The Attorney General must exercise "judgment and discretion in discerning the chief purposes and points of an initiative measure" and must present this information "in clear and understandable language." (*Ibid*.) A reviewing court must indulge all legitimate presumptions favoring the propriety of the Attorney General's actions when reviewing ballot materials he is tasked with drafting. (*Id*. at pp. 1452-1453.) Further, while the Elections Code expressly allows a challenge to be made concerning ballot materials, "[a] peremptory writ of mandate shall issue only upon clear and convincing proof that the

8

copy in question is false, misleading, or inconsistent with the requirements of this code or Chapter 8." (Elec. Code, § 9092; see also Gov. Code, § 88006.)

Real parties do not dispute that the title and summary describe the purpose of the measure in an accurate and nonprejudicial fashion. In fact, they emphasize the ballot summary includes express reference to changing the existing two-thirds voting requirement for passage of the local bonds affected by the measure. But real parties argue, and respondent court agreed, that similar language must be included in the ballot label to avoid misleading voters. That is despite the fact that the ballot label clearly states that Proposition 5 will allow local bonds with 55 percent voter approval, which is what it in fact proposes.

Not only is the language in the ballot label factually accurate, but we fail to perceive how a voter would not correctly construe the purpose or the proposition even *if* only reading the ballot label in isolation. As drafted, the ballot language unequivocally states that Proposition 5 "allows" approval of local bonds for infrastructure and housing with 55 percent of votes and that there are "[a]ccountability requirements." And immediately following this is the Legislative Analyst's language indicating Proposition 5 would increase "local borrowing" that would be "repaid with higher property taxes." We do not agree that voters only reading this language would believe they were doing anything other than relaxing the rules for authorizing such bonds. Real parties dismiss these points as a "trail of breadcrumbs" that does not inform the electorate of the chief purpose and point of Proposition 5. We disagree. What Proposition 5 would itself effectuate is couched in concise language that is easy to understand.

The fact that real parties challenged the ballot label in isolation from the title and summary points to an even more fundamental weakness in their argument. In considering a challenge to the title and summary, this court has emphasized that they should be read together as a whole and, in so doing, found a title was not likely to create confusion because of language found in the summary. (*Becerra v. Superior Court* (2017)

9

19 Cal.App.5th 967, 977-978.) While the ballot label is undoubtedly prominent in the voter information materials, the fact the title and summary here contain the information that real parties want included in the label substantially diminishes the force of their argument that there is a danger voters will be misled. Real parties presented no evidence establishing voters will be misled by the ballot materials at issue or that these materials are inconsistent with the Elections Code, much less evidence necessary to support a clear and convincing evidence finding by the trial court. (See § 9092; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012 [appellate review of a clear and convincing evidence finding requires "substantial evidence from which a reasonable fact finder could [conclude] it is highly probable that" a fact is true].) The " 'chief purpose and points' " requirement for the *title and summary* provision requires no more than substantial compliance by the Attorney General, with a presumption the documents the Attorney General prepared are accurate. (*Becerra*, at p. 975, quoting *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 243.) If anything, there must be more latitude accorded the Attorney General when exercising discretion to draft the "condensed version" contained in the ballot label. (§§ 303, 9051, subd. (b)(1).) Moreover, the Attorney General was operating under the additional constraint that, unlike the 100-word maximum for the title and summary, the 75-word maximum for the ballot label must account for the Legislative Analyst's fiscal impact summary. (Compare § 9051, subds. (a)(1) & (b)(1).)

Real parties nevertheless argue this court should accept respondent court's decision because the revised ballot label language adopted by respondent court includes the "exact same words found in the title and summary prepared by the Attorney General." Real parties also emphasize the fact that the Attorney General prepared the proposed order and judgment effectuating respondent court's tentative decision, suggesting that is somehow significant to our analysis. It is not. Likewise, the fact that the ballot label originally drafted did not ultimately contain more of the 75 available words is of no

10

consequence. The fact that the Attorney General included language in the title and summary that is omitted in the ballot label is entirely consistent with his discretion and the statutory requirement that the label be a "condensed version of the ballot title and summary." (§§ 303, subd. (b); 9051, subd. (b)(1).)

DISPOSITION

Having complied with the procedural requirements for issuance of a peremptory writ in the first instance, we are authorized to issue the writ forthwith and without oral argument. (See *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1243-1244; *Palma v. U.S. Industrial Fasteners, Inc.*, *supra*, 36 Cal.3d 171.) Let a peremptory writ of mandate issue vacating respondent court's August 9, 2024 order and judgment for peremptory writ of mandate and entering a new and different decision denying real parties' mandate petition.

This decision is final forthwith as to this court. (See Cal. Rules of Court, rule 8.490(b)(2)(A).) The temporary stay order issued by this court on August 9, 2024, which in part directed the State Printer not to use or begin preparation of ballot materials concerning the ballot label for Proposition 5, is vacated. Respondent court's order and judgment of August 9, 2024, directing the Attorney General to make changes to the ballot label for Proposition 5 is stayed pending finality of this decision for purposes of review.

The parties shall bear their own costs. (See Cal. Rules of Court, rule 8.493(a)(1)(B).)

/s/
ROBIE, Acting P. J.

We concur:

/s/
DUARTE, J.

/s/
RENNER, J.

12