[S. F. No. 16101. In Bank.—August 31, 1938.]

SIDNEY R. EPPERSON, Petitioner, v. FRANK C. JOR-
DAN, Secretary of State, etc., Respondent.

[S. F. No. 16098. In Bank.—August 31, 1938.]

EDWARD S. KORNMANN, Petitioner, v. FRANK C. JOR-
DAN, Secretary of State, etc., Respondent.

62

Jesse H. Steinhart, B. J. Feigenbaum and S. L. Ladar for Petitioner in S. F. No. 16101.

Wallace Sheehan and Fred M. Cross for Petitioner in S. F. No. 16098.

U. S. Webb, Attorney-General and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

O. K. Cushing and Ben C. Duniway, as *Amici Curiae,* on Behalf of Respondent.

THE COURT. — Petitioners, qualified electors and tax-payers of the state, by separate applications, seek writs of mandate directed to the Secretary of State commanding him (1) to refrain from submitting a certain purported initiative measure to the electors of the state, and (2) not to certify the measure to the registrars of voters and county clerks of the state. After the issuance of the alternative writs the respondent, by way of answer and return, filed general demurrers to the petitions. Inasmuch as the two petitions involve substantially the same contentions both will be disposed of in this one opinion.

The proposal which petitioners seek to keep from being submitted to the voters at the next general election is a constitutional amendment proposed under the initiative provisions of the state Constitution. It is signed by the requisite number of qualified electors of the state and has been filed with the Secretary of State within the time entitling it to be submitted at the November election.

Petitioners' main contention is that such proposal should be kept from the ballot because the circulation title of the measure appearing upon each page of the initiative petition whereon signatures appear, does not contain a ''summary of the chief purpose and points'' of the proposed constitutional amendment as required by the provisions of article IV, section 1, of the Constitution and section 1197b of the Political Code.

At the outset of our consideration of the problems here presented we are met by the contention of *amici curiae,* representing the proponents of the measure, that this court has no jurisdiction to consider the petitions for the reasons that: (1) Article IV of the Constitution reserves to the people the power to propose laws and amendments to the Constitution by the initiative process; that the Constitution itself sets up the steps for exercising this reserved power; that one of these constitutional steps is the preparation of a title and summary by the attorney-general; that under the separation of powers provided for by article III of the Constitution the initiative process must be held free from interference by the courts; and (2) that section 1197 of the Political Code provides the sole and exclusive method of objecting to the title

prepared by the attorney-general, that is by review by a statutory board of title commissioners.

Neither of these contentions is sound. The first contention is basically unsound in that the petitions filed herein do not seek judicial interference with a legislative function, but seek a determination as to whether the provisions of the Constitution and statutes have been followed. The petitioners are not seeking to control the actions of any legislative officer, but those of the Secretary of State—an administrative officer. This court frequently has exercised the power here invoked. (*Boyd* v. *Jordan*, 1 Cal. (2d) 468 [35 Pac. (2d) 533] ; *Clark* v. *Jordan*, 7 Cal. (2d) 248 [60 Pac. (2d) 457, 106 A. L. R. 549].)

The second contention equally lacks merit. It is predicated upon the provisions of sections 1197 (3) and 1197a of the Political Code. By these sections "any person who is dissatisfied" with the attorney-general's ballot or circulation titles to an initiative measure, may file his objections with the Secretary of State, who shall then transmit copies of the initiative measure, the attorney-general's title, and the objections thereto to "the Board of Title Commissioners, which board shall consist of the three justices of the District Court of Appeal . . . in and for the third appellate district, who shall be *ex officio* title commissioners for the purposes of this act and which board is hereby created". This board is then required to hold a hearing and prepare a proper title, and its determination "shall be final and conclusive". Obviously these sections purport to provide a method for passing upon the correctness of the attorney-general's title. If such sections were valid it is quite possible that the method therein provided was intended to be the sole method of passing upon the correctness of such titles. However, it is quite clear that these sections, inasmuch as they purport to confer nonjudicial duties on the appellate justices, are unconstitutional. This point need not be discussed at length. The principles involved have recently and exhaustively been considered by this court in *Abbott* v. *McNutt*, 218 Cal. 225 [22 Pac. (2d) 510, 89 A. L. R. 1109].) On the authority of that case and the cases and constitutional provisions therein cited, sections 1197 (3) and 1197a in so

far as they provide for the creation of said board of title commissioners must be held to be unconstitutional.

⬛ Before discussing the sufficiency of the title here challenged, some reference should be made to the constitutional and statutory provisions involved. Article IV, section 1, of the Constitution, as amended in 1932, is the section dealing with the initiative, and the method of its exercise. Among other things it provides: "Prior to the circulation of any initiative or referendum petition for signatures thereof, a draft of the said petition shall be submitted to the Attorney-General with a written request that he *prepare a title, and summary of the chief purpose and points of said proposed measure,* said title and summary not to exceed one hundred words in all . . . Any initiative or referendum petition may be presented in sections, but each section shall contain a full and correct copy of the title and text of the proposed measure . . . " Until 1937 this one hundred word title appeared only on the first page of each *section* of the initiative petition. Prior to 1937 on each *page* of each section of the petition there was required to be printed under the provisions of section 1197a of the Political Code a so-called "short title" in not to exceed twenty words, showing the "nature of the petition and the subject to which it relates". It was these short titles, prepared by the proponents of the measures, that were held legally insufficient in *Boyd* v. *Jordan* and *Clark* v. *Jordan, supra.* In 1937 the legislature amended sections 1197a and b of the Political Code so as to abolish the requirement of the short twenty word title on each page and to provide that the one hundred word title prepared by the attorney-general should appear not only on the first *page* of each *section* of the petition as required by the Constitution, but also across the top of *each page* of the petition on which signatures appear. Section 1197b of the Political Code as amended in 1937 provides: "The proponents of any proposed initiative measure shall prior to its circulation, place on each section of the petition in relation thereto above the text of the measure, and across the top of each page thereof whereon signatures are to appear, the title and summary referred to in the Constitution and in section 1197a of the Political Code . . . "

These 1937 amendments worked an important change in the law by legislative mandate and have modified to some extent the rule of the Boyd and Clark cases, so strongly relied upon by petitioners. In those cases the titles therein challenged were the short titles prepared by the proponents of the measures. Although the title must contain a "summary of the chief purpose and points of said proposed measure" it need not be a catalogue or index to all of the provisions of the measure. In approaching the question as to whether the title so prepared is a proper one all legitimate presumptions should be indulged in favor of the propriety of the attorney-general's actions. Only in a clear case should a title so prepared be held insufficient. Stated another way, if reasonable minds may differ as to the sufficiency of the title, the title should be held to be sufficient. These rules of construction are in accord with the fundamental concept that provisions relating to the initiative should be liberally construed to permit, if possible, the exercise by the electors of this most important privilege.

Keeping these rules in mind, we turn to a consideration of the provisions of this proposed constitutional amendment and to the title prepared by the attorney-general. We are called upon to determine whether that title contains a "summary of the chief purpose and points of said proposed measure".

The main purposes of the proposed amendment are clear—they are, to repeal existing constitutional tax limitations on real property, to progressively abolish taxes on tangible personal property and improvements, to repeal provisions of the Constitution which now prohibit this, and to abolish certain existing taxes, chief of which is the sales tax.

To accomplish these main purposes the proposal is divided into three parts. First, that portion of article IV, section 34a, of the Constitution providing that not more than 25 per cent of the total appropriations from all funds of the state shall be raised by taxes on real and personal property is repealed.

Second, a new section—section 5—is added to article XIII of the Constitution to provide:

(a) that for the first year after the adoption of this amendment taxation of improvements and tangible personal prop-

erty levied by the state or other taxing power shall not exceed 90 per cent of the rate levied on land for the same year; that annually thereafter the rate on improvements and tangible personal property shall be reduced an additional 10 per cent less than the rate levied on land; that after ten years, improvements and tangible personal property shall be exempt from taxation; that the present assessed value of improvements and tangible personal property shall not be increased; that existing limitations of the tax rate of county, city and county, municipality or district, shall become inoperative proportionately to the extent necessary to offset the reduced taxation of tangible personal property and improvements required by this article.

(b) that improvements on land occupied by the owner as a home are exempt to the extent of $1,000.

(c) that no existing or future tax moratorium or extension of time for the payment of taxes shall extend to any class of property except improved property in one parcel and ownership, of an assessed value not to exceed $5,000.

(d) In this subdivision the words "improvements," "tangible personal property" and "land" are defined.

Third, a new section—section 5.5—is added to article XIII to provide:

(a) that on July 1st after the adoption of the amendment the Retail Sales Tax Act of 1933, The Use Tax Act of 1935, the Automobile License Tax Act of 1935 and the Private Car Tax Act of 1937, and all acts amendatory or supplementary thereto are repealed, subject to the right of the state to collect accrued taxes.

(b) that "except for police or regulatory purposes", no tax, license fee or excise shall hereafter be levied upon the privilege of selling, storing, or consuming tangible personal property or which is based upon or measured by the value of tangible personal property or improvements.

(c) that nothing in the proposal shall be construed as repealing or affecting the Motor Vehicle Fuel License Tax Act or the Use Fuel Tax Act, nor, except as specifically provided, shall anything in the proposal be construed as repealing, modifying or otherwise affecting or prohibiting the continuation or reenactment of existing license taxes or fees, corporation taxes, inheritance taxes, or income taxes, or

existing constitutional tax exemptions, or as forbidding the imposition of severance taxes.

(d) that the proposal shall not affect the obligations of any county, city and county, municipality or district, and shall be deemed inoperative to the extent that any bonds or other outstanding obligations specifically require the imposition of taxes upon tangible personal property or improvements.

(e) that this amendment does not repeal or modify that provision of section 15 of this article requiring that out of state revenues there shall be first set aside the moneys for the support of the public school system and state university.

(f) that the provisions of the proposal shall control in any case of conflict with any other provision of the Constitution.

The circulation title, prepared by the attorney-general, and challenged in these proceedings reads as follows: "TAXA-TION'. Initiative Constitutional Amendment. Repeal limitation on *ad valorem* property taxes for State appropriations. Prohibits increasing present assessed valuation of improvements and tangible personal property; annually reduces tax rate thereon and exempts same from taxation in nine years, except for regulation; existing tax rate limitations becoming inoperative proportionately as necessary to offset such reductions. Exempts from taxation $1000.00 of assessed improvements on land occupied by owner as home. Limits tax moratoriums to improved property in one parcel and ownership having assessed valuation not exceeding $5000.00. Repeals specified Sales, Use and Private Car Taxes."

In the Kornmann petition it is alleged that the proposed initiative measure is violative of the Constitution in that it does not present a single, comprehensive measure to be voted upon by the electors, but contains several proposed amendments and the repeal of four general laws which cannot be voted on separately by the electors. It is contended that the provisions of article XVIII, section 1, of the Constitution providing that in the case of constitutional amendments proposed by the legislature that "Should more amendments than one be submitted at the same election, they shall be so prepared and distinguished, by numbers or otherwise, that each can be voted on separately" are applicable to amendments proposed under the initiative process. Little need be said in reference to this contention. The point has heretofore been

fully considered by this court, and decided adversely to the contentions of petitioner. (*Wright* v. *Jordan*, 192 Cal. 704, 711 [221 Pac. 915].) That case expressly held that the provisions of article IV, section 1, relating to the initiative were not limited by the provisions of article XVIII, section 1. The argument of petitioner that that case should be overruled is not convincing. We are satisfied with the correctness of the prior decision.

The other contentions of both petitioners are that the title is fatally defective in that:

1. It fails to disclose that the proposal not only repeals certain tax statutes, but places in the Constitution a prohibition against the levying in the future for revenue purposes of any tax, excise, or license fee upon the privilege of selling, storing, using, or consuming tangible personal property or which is measured by the value of tangible personal property or improvements.

2. It fails to disclose that the proposal repeals the Motor Vehicle License Fee Act and prohibits its reenactment.

3. It fails to disclose that other taxes are indirectly repealed.

4. In that the title states that the tax rate on improvements and tangible personal property is to be "annually reduced" for nine years—that this statement is untrue; that no annual reduction is in fact granted; that all that is granted is an adjustment of such tax rate in relation to the rate on land.

5. In that the proposal not only limits the granting of tax moratoriums to certain property, as disclosed by the title, but provides that no extension of time for the payment of taxes shall extend to any class of property except improved property in one parcel and ownership of an assessed value not exceeding $5,000.

6. In that the title fails to disclose that the proposal contains definitions of certain terms.

7. In that the title fails to disclose that the proposed measure shall control if in conflict with any other provisions of the Constitution.

8. In that the title fails to disclose that the provisions of the proposed measure vitally affect the taxing power of every county, city and county, municipality and district, in the state.

9. In that the title fails to disclose that the chief purpose of the measure is to tax land to the exemption of personal property and improvements.

We do not find it necessary to take up each of the above objections *seriatim* in order to demonstrate why the failure to mention them in the title does not render the title defective. It must be remembered that all the Constitution or Political Code require is that the title shall be a "summary of the chief purpose and points of said proposed measure". A substantial compliance with this section is all that is required. (*California Teachers' Assn.* v. *Collins,* 1 Cal. (2d) 202 [34 Pac. (2d) 134].) For the preparation of this title and summary the only rule provided by law is that it must not exceed one hundred words. What the "chief purpose" or "points" of a measure is obviously many times a question of opinion. If reasonable minds can differ as to whether a particular provision is or is not a "chief point" of the measure the determination of the attorney-general should be accepted.

In reading over the proposed measure it is obvious that its "chief purpose and points" are to repeal existing constitutional tax limitations on real property, to progressively abolish taxes on tangible personal property and improvements, to repeal provisions of the Constitution which now prohibit this, and to repeal certain taxes, chief of which is the sales tax. The other provisions of the proposal are subsidiary or auxiliary to this chief purpose and to these points. In reading over the title here challenged it is obvious that the chief purpose and points above mentioned are fully set forth. The title also includes many other references to various provisions of the proposal. Evidently the attorney-general believed they were important. It might well be that the title as drafted includes references to some provisions which to some might seem subsidiary and auxiliary, and that it fails to mention other matters which to others might seem of considerable importance. However, we are not permitted to keep this proposal from the ballot upon any such ground. We are called upon to decide simply whether within reasonable and fair limits, so as to protect the electorate from imposition, the title discloses the chief purpose and points of the proposed measure. As we have seen the title does this.

The fact that it includes some matters which are auxiliary and subsidiary, and fails to mention others of the same character does not render the title fatally defective. A mere reading of the many objections to the title raised by petitioners indicates that it is their belief that the title must include a complete index of all of the provisions of the proposal regardless of whether such provisions are main provisions or are auxiliary and subsidiary thereto. To do this within the limits of one hundred words would be palpably impossible. We have carefully read each of the nine objections raised by petitioners to the present title and while several of these embody some very important matters, we think that all of them are subsidiary and auxiliary to the chief purpose and points of the proposal as heretofore set forth. No useful purpose would be served by considering each of them separately.

For the foregoing reasons the alternative writ heretofore issued is discharged, and the peremptory writ is denied.