Filed 11/17/17; Supreme Court publication order 12/20/17

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| XAVIER BECERRA, as Attorney General, etc.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SACRAMENTO COUNTY,<br><br>    Respondent;<br><br>TRAVIS ALLEN,<br><br>    Real Party in Interest. | C085670<br><br>(Super. Ct. No. 34201780002643) |

Petitioner the Attorney General of the State of California seeks a peremptory writ of mandate directing respondent superior court to vacate its order requiring that he rescind the circulating title and summary he prepared for a proposed 2018 ballot initiative measure to repeal portions of Senate Bill 1, the Road Repair and Accountability Act of 2017, and replace it with the title and summary approved by the court.[1]

---

[1] Respondent court entered judgment on its order on October 6, 2017, thereby granting the petition of real party in interest Travis Allen. The judgment is appealable by the

1

Respondent court ruled the circulating materials prepared by the Attorney General are confusing, misleading, and likely to create prejudice against the proposed measure.

After the Attorney General filed his writ petition in this court, and initial opposition was filed by the real party in interest Travis Allen, we issued an order to preserve our jurisdiction, staying respondent court's ruling and any proceedings thereon, pending further order of this court. We also informed the parties that we were considering the issuance of a peremptory writ in the first instance, and invited further opposition. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171.) The parties urged the court to resolve the issues on an expedited basis through the Attorney General's writ petition.

Having reviewed the petition and opposition thereto, we conclude the language prepared by the Attorney General—contrary to the findings of the respondent court— does not mislead the voters or create prejudice against the measure. Consequently, there is no legal or factual basis for respondent court's interference with the Attorney General's exercise of his statutory duties. We shall therefore issue the preemptory writ of mandate and continue our stay order pending finality of this decision.

## BACKGROUND

Because they are largely undisputed, we take these facts chiefly from respondent court's September 25, 2017 ruling on submitted matter, upon which its judgment is based.

In April of 2017, the Legislature enacted Senate Bill 1, the Road Repair and Accountability Act of 2017 (hereafter SB 1). Among other things, SB 1 imposes various taxes and fees to increase funding for road maintenance, mass transit, and other

Attorney General, and he has appealed it. However, given the immediate time constraints for circulating a proposed initiative for signature, the Attorney General's remedy by appeal is inadequate. (See *Yes on 25, Citizens for an On-Time Budget v. Superior Court* (2010) 189 Cal.App.4th 1445, 1449, fn. 2 (hereafter *Yes on 25*).)

transportation programs.  In enacting SB 1, the Legislature found that the state faces a $59 billion shortfall in funding needed to adequately maintain the existing state and local roadway system over the next 10 years.  The Legislature also found that taxes and fees dedicated to maintenance of the system had not been increased in more than 20 years.  SB 1 was enacted as urgency legislation, and took effect immediately upon its approval by the Governor, on April 28, 2017.

Beginning on November 1, 2017, SB 1 is expected to raise over $52.4 billion in new transportation funding over 10 years.  The key sources of new transportation funding consist of a $0.12 per gallon increase of the excise tax on gasoline; a $0.20 per gallon increase of the excise tax on diesel fuel; a 4 percent increase of the sales tax on diesel fuel; a new annual "transportation improvement" registration fee on all vehicles, ranging from $25 to $175 (based on the vehicle's market value); and a new "road improvement fee" of $100 for registration/renewal of zero-emission vehicles model year 2020 or later.

SB 1 designates the new funding to be used for road maintenance and rehabilitation, transit improvements, and other transportation purposes and programs.  According to the Legislative Analyst's Office, SB 1 is expected to distribute $2.6 billion in new funding in 2017-18, as follows: $742 million for repair and maintenance of state highways and local roads; $550 million for transit; $450 million for congested/trade corridors; $400 million for repair and maintenance of state bridges and culverts; $200 million for local partnership road repair and maintenance projects; $100 million for bicycle and pedestrian projects; $71 million for state parks and agricultural programs; and $66 million for other transportation-related programs.  These new taxes and fees will adjust upward annually for inflation.

SB 1 also creates a number of new programs and funds to distribute the funds (including the Road Maintenance and Rehabilitation Program, the Congested Corridors Program, and the Advance Mitigation Program); provides for the repayment from the general fund of outstanding transportation loans totaling $706 million; establishes new

10-year performance targets for the state highway program; repeals portions of the Tribal Compact Assets Securitization Act; requires the California Department of Transportation (Caltrans) to develop a plan to increase the dollar value of contracts and procurements awarded to small businesses, disadvantaged business enterprises, and disabled veteran business enterprises; requires the Department of Motor Vehicles to confirm, prior to registration/renewal of certain heavy diesel-fueled vehicles, that the vehicle is compliant with applicable air pollution control requirements; and creates a "useful life" period for commercial trucks, during which truck owners will not be required to replace or modify the vehicle's engine and emission control systems.

Finally, SB 1 includes new "accountability" provisions, including the creation of an "Independent Office of Audits and Investigations," with an appointed director to be known as the "Inspector General," to ensure Caltrans makes efficient, effective, and financially responsible transportation decisions, and spends funds consistent with applicable standards, practices, and requirements.

The month following the enactment of SB 1, Allen, an Orange County Assemblymember, filed with the Office of the Attorney General a ballot initiative (numbered 17-0004), seeking to repeal many of the provisions of SB 1, including the new taxes and fees it imposed. While it does not attempt to repeal SB 1 in its entirety, the 32-page proposal repeals some statutory sections, amends other sections, and adds still other statutory sections. It proposes changes to the Government Code, the Streets and Highways Code, the Health and Safety Code, the Public Utilities Code, the Revenue and Taxation Code, and the Vehicle Code.

As relevant to this proceeding, Allen then requested the Attorney General to prepare a circulating title and summary, for use in connection with the gathering of signatures for placing the initiative on the ballot. (Elec. Code, § 9001, subd. (a) ["Before the circulation of an initiative or referendum petition for signatures, the text of the proposed measure shall be submitted to the Attorney General with a written request that a

4

circulating title and summary of the chief purpose and points of the proposed measure be prepared . . ."].)

After requesting and receiving from the Legislative Analyst's Office a written estimate of the net fiscal impact of the proposed initiative so that it may be included in the circulating title and summary (see Elec. Code, § 9005), the Attorney General submitted the following circulating title and summary:

"**ELIMINATES RECENTLY ENACTED ROAD REPAIR AND TRANSPORTATION FUNDING BY REPEALING REVENUES DEDICATED FOR THOSE PURPOSES.  INITIATIVE STATUTE**.  Eliminates recently enacted state and local transportation funding for repair and maintenance of streets, highways, bridges, safety projects, and public transportation by repealing portions of the tax on gasoline ($0.12 per gallon) and diesel fuel ($0.20 per gallon), sales and excise taxes on diesel fuel (4% per gallon), vehicle registration fees ($25-$175, depending on vehicle value), and $100 zero-emission vehicle fee.  Eliminates Independent Office of Audits and Investigations, which is responsible for ensuring accountability in the use of revenue for transportation projects.  Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local government:  **Reduced annual state transportation revenues of $2.9 billion in 2018-19, increasing to $4.9 billion annually by 2020-21.  These revenues would otherwise primarily support state highway maintenance and rehabilitation, local streets and roads, and mass transit.**  (17-0004)."

Dissatisfied with this text, Allen filed a verified petition for writ of mandate and declaratory relief, alleging that the Attorney General's circulating title and summary is false, argumentative and misleading, and does not provide a true and impartial statement of the chief purposes and points of the measure, mainly by "omitting the words 'tax' and 'fee' from the title."  He asked that the Attorney General be ordered to adopt a revised title and summary that "fairly and accurately describes the initiative."

5

Following a hearing,[2] respondent court issued a ruling on submitted matter, in which it granted Allen's petition and issued a preemptory writ of mandate commanding the Attorney General to rescind his circulating title and summary and replace it with the following language:

"**REPEALS RECENTLY-ENACTED GAS AND DIESEL TAXES AND VEHICLE REGISTRATION FEES. ELIMINATES ROAD REPAIR AND TRANSPORTATION PROGRAMS FUNDED BY THESE TAXES AND FEES. INITIATIVE STATUTE**. Eliminates recently enacted state and local transportation funding for repair and maintenance of streets, highways, bridges, safety projects, and public transportation by repealing recently-enacted taxes on gasoline ($0.12 per gallon) and diesel fuel ($0.20 per gallon), sales and excise taxes on diesel fuel (4% per gallon), vehicle registration fees ($25-$175), and $100 zero-emission vehicle fee. Eliminates newly-established Independent Office of Audits and Investigations, which is responsible for ensuring accountability in the use of revenue for transportation projects. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local government: **Reduced annual state transportation revenues of $2.9 billion in 2018-19, increasing to $4.9 billion annually by 2020-21. These revenues would otherwise primarily support state highway maintenance and rehabilitation, local streets and roads, and mass transit.** (17-0004)."

---

[2] Before the hearing, respondent court issued a tentative ruling ordering the Attorney General to be prepared at the hearing to discuss alternative language for the title and summary. In response to the directive, the Attorney General offered some alternative language at the hearing, which respondent court also rejected on the same grounds as it had rejected the first title and summary proposed by the Attorney General. For the purposes of this analysis, we do not discuss the alternative language prepared by the Attorney General at respondent court's direction.

The ruling was subsequently reduced to a judgment, prepared by Allen.  On the same date, the Attorney General filed a petition for writ of mandate in this court, seeking to overturn respondent court's order.

**DISCUSSION**

The Legislature has conferred upon the Attorney General the task of preparing, in no more than 100 words, an impartial title and summary for each initiative measure submitted to the voters.  (Elec. Code, §§ 9004, 9051; undesignated statutory provisions refer to the Elections Code.)  These preelection materials must reasonably inform the voters of the character and purpose of the proposed measure.  (*Horneff v. City & County of San Francisco* (2003) 110 Cal.App.4th 814, 820.)  Section 9004, subdivision (a) gives to the Attorney General the job of "prepar[ing] a circulating title and summary of the chief purposes and points of the proposed measure," and section 9051, subdivision (c) states, in so doing, the Attorney General shall "give a true and impartial statement of the purpose of the measure in such language that the . . . title and summary shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure."  (See § 9004, subd (a) [the same standards apply to a circulating title and summary as to a ballot title and summary].)  "The main purpose of these requirements is to avoid misleading the public with inaccurate information."  (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 243 (*Amador Valley*).)

Implicit in these guidelines is that the Attorney General exercises judgment and discretion in discerning the chief purposes and points of an initiative measure which must be presented to the electorate in clear and understandable language.  (*Yes on 25, supra*, 189 Cal.App.4th at p. 1452, citing *Epperson v. Jordan* (1938) 12 Cal.2d 61, 66, 70.)  Accordingly, the Attorney General is afforded "considerable latitude" in preparing a title and summary.  (*Tinsley v. Superior Court* (1983) 150 Cal.App.3d 90, 108; see *Yes on 25, supra*, 189 Cal.App.4th at pp. 1452-1453.)  "This deference stems in part from the recognition that drafting a title and summary 'can be a difficult task where multiple

7

reasonable interpretations . . . are possible.' " (*Yes on 25*, at p. 1453; *Zaremberg v. Superior Court* (2004) 115 Cal.App.4th 111, 117.)

Thus, "[a]s a general rule, the title and summary prepared by the Attorney General are presumed accurate, and substantial compliance with the 'chief purpose and points' provision is sufficient." (*Amador Valley, supra*, 22 Cal.3d at p. 243; see also *Tinsley v. Superior Court, supra*, 150 Cal.App.3d at p. 108.) If reasonable minds may differ as to its sufficiency, the title and summary prepared by the Attorney General must be upheld (*Amador Valley, supra*, 22 Cal.3d at p. 243) because "all legitimate presumptions should be indulged in favor of the propriety of the attorney-general's actions." (*Epperson v. Jordan, supra*, 12 Cal.2d at p. 66; see *Holmes v. Jones* (2000) 83 Cal.App.4th 882, 888.) Only in a "clear case" should a title and summary prepared by the Attorney General be held insufficient. (*Yes on 25, supra*, 189 Cal.App.4th at p. 1453; see *Brennan v. Board of Supervisors* (1981) 125 Cal.App.3d 87, 92-93.)

In contrast to the latitude and discretion granted the Attorney General, courts do not have a wide range of discretion in ruling on a preelection challenge to the sufficiency of a title and summary prepared by the Attorney General. (*Yes on 25, supra*, 189 Cal.App.4th at p. 1453.) Rather, though we independently examine the question of whether the title and summary substantially complies with statutory standards (see *Martinez v. Superior Court* (2006) 142 Cal.App.4th 1245, 1248), we may grant relief "only upon clear and convincing proof that the [challenged materials] in question [are] false, misleading, or inconsistent with the requirements of this code." (§ 9092; *Yes on 25, supra*, 189 Cal.App.4th at p. 1453.)

Given these heightened standards, respondent court's order striking the circulating title and summary prepared by the Attorney General in favor of language drafted by the court cannot stand.

As a threshold matter, we reject Allen's suggestion that we evaluate the title separately from the summary to determine whether the Attorney General has met his

statutory burden, and the title itself must meet all statutory requirements. The Elections Code defines the circulating title and summary as a single document, using singular verbs to describe what it is and what it does (see § 303.5, subd. (c) [defining the "circulating title and summary" as "the text that is required to be placed on a petition for signatures that is either one of the following: [¶] (A) The summary of the chief purpose and points of a proposed initiative measure that affects the Constitution or laws of the state, and the fiscal impact of the proposed initiative measure. [¶] (B) The summary of the chief purpose and points of a referendum measure that affects a law or laws of the state"].) Other provisions of the Elections Code likewise define the title and summary as a single document, and constraints on the Attorney General in the discharge of his duty to prepare them indicates they are to be read together. (See, e.g., §§ 9004, subd. (a) [the Attorney General shall "prepare a circulating title and summary of the chief purposes and points of the proposed measure"] and 9051, subd. (c) [in so doing, the Attorney General shall "give a true and impartial statement of the purpose of the measure in such language that the . . . title and summary shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure"].) Allen's reliance on cases construing a former version of the law are inapposite on this point. (Compare *Boyd v. Jordan* (1934) 1 Cal.2d 468 [finding that proponent-prepared title—"Initiative Measure Providing for Adoption of Gross Receipts Act"—did not meet then-applicable statutory requirement[3] that the title describe "the nature of the petition and the subject to which it relates"] and *Clark v. Jordan* (1936) 7 Cal.2d 248 [finding that proponent-prepared title failed to comply with the statute because it "fails to disclose that any new taxes of any kind are to be imposed"]

---

[3] *Boyd v. Jordan, supra*, 1 Cal.2d. 468, quotes the prior version of the statute it was construing: "Section 1197b of the Political Code provides that, 'Across the top of each page after the first page of every initiative . . . petition or section thereof which may be prepared and circulated in accordance with law there shall be printed in eighteen-point gothic type a short title, in not to exceed twenty words, showing the nature of the petition and the subject to which it relates.' " (*Id.* at pp. 470-471.)

and *Epperson v. Jordan, supra*, 12 Cal.2d at p. 66 [opining that the statutory change requiring Attorney-General-prepared titles calls into doubt the continuing vitality of the substantive analysis of both those cases].)

Reading the title and summary together, we conclude the text prepared by the Attorney General is not misleading, argumentative, or likely to create prejudice against the measure. Contrary to respondent court's conclusion that "the ordinary voter would assume that the sole purpose of the measure is to eliminate (reduce) transportation funding," the Attorney General's title and summary identifies the specific taxes and fees that will be repealed—the tax on gasoline, tax on diesel fuel, sales and excise taxes on diesel fuel, vehicle registration fees, and zero-emission vehicle fees—and identifies the specific amount by which the particular tax or fee is sought to be repealed by the initiative. It also states the concomitant fact that recently enacted state and local transportation funding would be eliminated. In so doing, the title and summary prepared by the Attorney General "reasonably inform the voter of the character and real purpose of the proposed measure." (*Tinsley v. Superior Court*, *supra*, 150 Cal.App.3d at p. 108.) It does not, as Allen argues, "include[] all the sweet and exclude[] all the bitter." Rather, the title and summary will communicate to those persons whose signatures are being solicited that, under the proposed initiative, both government spending on transportation infrastructure and road repair *and* taxes and fees will be repealed. (See *Costa v. Superior Court* (2006) 37 Cal.4th 986, 1016 [courts have been most concerned with departures from the statutory requirements that mislead or withhold vital information from those persons whose signatures are solicited].)

Unlike respondent court, we do not perceive the Attorney General's use of the word "revenues" in the title phrase "repealing revenues" to be inherently confusing, particularly when read in connection with the summary's reference to the initiative's "repealing portions of the tax on gasoline . . . and diesel fuel." Respondent court reasons the word "revenues" used in the title as misleading or likely to create confusion because

10

of its appearance in the title as part of the phrase "repealing revenues," because "the term repeal, which means to annul, rescind, cancel, or nullify, is a term generally associated with laws or legislative acts." We do not find it confusing when reading the title and summary together as a whole: the second sentence—or the "summary" portion of the title and summary—clearly states the taxes and fees which would be repealed, and in what amount, as we note above. That respondent court reached a contrary conclusion indicates that reasonable minds may differ; but "a difference of opinion does not rise to the level of clear and convincing proof that the challenged language in the ballot title and summary and the ballot label is misleading." (*Yes on 25, supra*, 189 Cal.App.4th at p. 1454.)

We also reject the argument advanced by both respondent court and Allen that—while the initiative would both eliminate transportation funding *and* repeal taxes and fees—the Attorney General's title and summary is misleading because it presents the initiative's two effects in the wrong order. In respondent court's view, repealing taxes and fees "is not a means to an end, but an end in itself" and in choosing to list repealing revenues *after* the elimination of transportation funding, the Attorney General has "obscured" the true purpose of the measure. Respondent court's rewrite of the title and summary flips its two effects: the court first states that the initiative would repeal taxes and fees, and then indicates that it would eliminate transportation programs. There is no dispute that this initiative both repeals certain sources of funding, and eliminates certain transportation programs funded by that source. The title and summary prepared by the Attorney General is neither false, nor misleading, nor argumentative: it identifies both effects; both effects are true, and both effects are neutrally presented. One of the two effects—either repealing revenues or eliminating transportation—must be stated first. In our view, the "considerable latitude" possessed by the Attorney General in preparing a title and summary (see *Yes on 25, supra*, 189 Cal.App.4th at pp. 1452-1453) encompasses the ability to determine which effect of the proposed initiative's two effects to list first. The title and summary are not rendered "false, misleading, or inconsistent with the

11

requirements of this code" (§ 9092) simply because it *first* states that transportation programs will be eliminated, and *then* states that taxes and fees will be repealed.

Moreover, given the extensive, but not complete, repeal of SB 1 proposed by the initiative, and the number of statutory revisions that would result from its passage, preparation of a circulating title and summary that would give the public a true and impartial statement of the purpose of the measure is the very sort of difficult task the Legislature has properly delegated to the Attorney General.  (See *Yes on 25, supra*, 189 Cal.App.4th at p. 1453; cf. *Lungren v. Superior Court* (1996) 48 Cal.App.4th 435, 440-441 [given the brevity of the proposed initiative, the Attorney General's use of the initiative's own words as the title and summary is appropriate].)  Here, then, we cannot fault the Attorney General's decision to state first that the initiative will eliminate certain transportation funding.  Nor do we agree with respondent court that the Attorney General's title and summary "focus[es] so heavily on the elimination of funding that it obscures the chief purpose of the initiative: repeal of the recently-enacted taxes and fees." Were we writing on a blank slate, we might reverse the order of the two effects, but that is not the standard we apply here.  Rather, the question of what is and what is not the most important provision is a question of opinion and, unless untrue, misleading, or argumentative, " ' " 'the opinion of the attorney-general should be accepted by this court.' " ' " (*Lungren v. Superior Court, supra*, 48 Cal.App.4th at p. 440.)

Allen similarly insists the Attorney General has written the title "to focus entirely on the elimination of transportation funding, and avoid any reference to 'taxes' and 'fees' " and that his having done so necessarily creates a misleading title and summary. We disagree.  First, we repeat that current election law requires that we read the title and summary together, and the words "taxes" and "fees" certainly appear extensively in the summary.  Second, and as respondent court recognizes, the title alone need not use any particular words—including "taxes" and "fees"—if it otherwise complies with the statute. (See *Lungren v. Superior Court, supra*, 48 Cal.App.4th at pp. 441-443 [rejecting the

notion that the Attorney General " 'has not fully stated the main purpose of chief point of the initiative, . . . to effect changes or stop the affirmative action programs within the State of California' " because it failed to use the words affirmative action in the ballot title and summary, and ballot label].)

Respondent court errs, moreover, in drawing any conclusion from the fact that the Attorney General "could have included the terms 'taxes' and 'fees' in the title and still complied with the 100-word limit," yet he failed to do so. To infer an intent to mislead the public from the fact that the Attorney General "could have" written his title and summary differently is inconsistent with our duty to indulge all legitimate presumptions in favor of the propriety of the Attorney General's actions. (See *Epperson v. Jordan, supra*, 12 Cal.2d at p. 66; *Amador Valley, supra*, 22 Cal.3d at p. 243.) Nor should a court draw any adverse conclusion from the fact that the Attorney General wrote his own title and summary, rather than using one proposed by Allen, as respondent court suggests it does here (opining that Allen's "proposal shows it is not difficult to write a summary of the initiative in clear and understandable language. And this does call into question why the Attorney General used the confusing language that he did").

There will always be a multitude of ways in which any initiative or ballot proposal "could have" been described. That is the nature of language. But the Elections Code has not made the courts the drafters of titles and summaries. That role has been assigned to the Attorney General. Our task is not to compose but to review the language composed by the Attorney General for accuracy and impartiality. Perhaps better words could be chosen or arranged differently but there is no basis to conclude that the Attorney General's work product is inaccurate, argumentative or misleading, or otherwise beyond the bounds of the extensive discretion reposed in that office in fashioning a title and summary.

13

**DISPOSITION**

Petitioner has sought the issuance of a peremptory writ in the first instance, and real party in interest has filed opposition thereto.  The procedural requirements delineated in *Palma v. U.S. Industrial Fasteners, Inc.*, *supra*, 36 Cal.3d 171 have been satisfied, and we are authorized to issue the requested relief.

Let a peremptory writ of mandate issue directing respondent court to vacate its ruling on submitted matter of September 25, 2017, and the judgment entered October 6, 2017, and to enter a new order denying real party in interest Travis Allen's verified petition for writ of mandate.

This decision is final forthwith.  (See Cal. Rules of Court, rule 8.490(b)(2)(A).) The previously issued stay shall remain in effect pending finality of this decision for purposes of review.

The parties shall bear their own costs.  (See Cal. Rules of Court, rule 8.493(a)(1)(B).)


                                                               RAYE               , P. J.


We concur:



          MURRAY          , J.



          DUARTE          , J.


14

ORIGINAL PROCEEDING in mandate. Timothy M. Frawley, Judge. Stay issued. Petition granted.

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Constance L. LeLouis and Seth E. Goldstein, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Enterprise Counsel Group, Benjamin P. Pugh, James S. Azadian and Garrett M. Fahy for Real Party in Interest.